UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND, <br><br> 3180 Fairview Park Drive, Suite 400 <br> Falls Church, VA 22042 <br><br> Plaintiff, <br><br> v. <br><br> PORT BYRAM HOLDINGS, LTD., <br><br> 1 Martin Place <br> Port Chester, NY 10573 <br><br> and <br><br> PRECISION 1 CONTRACTING, INC. <br><br> 1 Martin Place <br> Port Chester, NY 10573 <br><br> Defendants. | CIVIL ACTION NO. 1:22-cv-1241 <br><br> **Additional Required Service under 29 U.S.C. § 1132(h) to:** <br><br> **U.S. Department of Labor** <br> **Attn: Assistant Solicitor** <br> **for Plan Benefits Security** <br> **200 Constitution Ave., N.W.** <br> **Washington, DC 20002** <br><br> **U.S. Department of Treasury** <br> **Attn: Secretary of the Treasury** <br> **1500 Pennsylvania Avenue, NW** <br> **Washington, D.C. 20220** |

**COMPLAINT**

Plaintiff, the Board of Trustees of the Sheet Metal Workers' National Pension Fund ("NPF" or "Fund"), hereby complains as follows:

**Introduction**

1. This is a civil action brought by an employee benefit plan/trust fund, and by the Trustees of the Fund, pursuant to Sections 502(a)(3), (d)(1), (g)(2), 515, 4219, 4221, and 4301 of the Employee Retirement Income Security Act of 1974, *as amended* ("ERISA"), 29 U.S.C. §§ 1132(a)(3), (d)(1), (g)(2), 1145, 1399, 1401, and 1451, and Section 301(a) of the Labor Management Relations Act of 1947, *as amended* ("LMRA"), 29 U.S.C. § 185. The Fund seeks a monetary judgment against Defendants awarding delinquent withdrawal liability, accrued interest,

1

liquidated damages, and attorneys' fees and costs, through the date of judgment, as well as those amounts that become due and owing through the date of judgment, pursuant to Sections 502, 515, and 4301 of ERISA, 29 U.S.C. §§ 1132, 1145, and 1451, Section 301 of the LMRA, 29 U.S.C. § 185, the collective bargaining agreement, and the Trust Document governing the Fund.

## Jurisdiction and Venue

2. Jurisdiction is conferred upon this Court by Sections 502(e), (f) and 4301(c) of ERISA, 29 U.S.C. §§ 1132(e), (f) and 1451(c). Jurisdiction also lies under 28 U.S.C. § 1331.

3. Venue is proper under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), Section 4301(d) of ERISA, 29 U.S.C. § 1451(d), as the Plaintiff Fund is administered in this district with its principal place of business in Falls Church, Virginia.

4. Pursuant to Section 502(h) of ERISA, 29 U.S.C. § 1132(h), a copy of this Complaint will be served upon the Secretary of United States Department of Labor and the Secretary of the United States Department of the Treasury by certified mail on or about the date of filing.

## Parties and Relevant Entities

5. Plaintiff Board of Trustees, Sheet Metal Workers' National Pension Fund ("NPF") is the collective name of the trustees of the Sheet Metal Workers' National Pension Fund. The NPF is an employee pension benefit plan within the meaning of Sections 3(2) and (3) of ERISA, 29 U.S.C. §§ 1002(2), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing pension benefits to eligible employees. The NPF is, and at all times material herein has been, a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The Trustees of the NPF are duly authorized Trustees whose duty it is to administer the

NPF for the benefit of the participants and beneficiaries of the NPF. The Trustees are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). The trust, its Trustees and plan are individually or jointly referred to as "NPF" in this Complaint. The NPF is administered at 3180 Fairview Park Drive, Suite 400, Falls Church, VA 22042.

6. The Trustees of the Plaintiff Fund bring this action in their collective names or, as necessary or appropriate, in the name of the plan, and its participants, and beneficiaries pursuant to Federal Rule of Civil Procedure 17.

7. At all times relevant to this action, Zodiac Industries, Inc. ("Zodiac") has been an employer within the meaning of 29 U.S.C. § 152(2) and Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and has been engaged in an industry affecting commerce within the meanings of Sections 3(11) and (12) of ERISA, 29 U.S.C. §§ 1002(11) and (12). Zodiac was a corporation existing under the laws of the state of New York with a principal place of business at 1 Martin Place, Port Chester, NY. Zodiac is not a defendant to this action.

8. At all times relevant to this action, Defendant Precision 1 Contracting, Inc. ("Precision 1"), has been an employer within the meaning of 29 U.S.C. § 152(2) and Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and has been engaged in an industry affecting commerce within the meanings of Sections 3(11) and (12) of ERISA, 29 U.S.C. §§ 1002(11) and (12). Upon information and belief, at all times relevant to this action, Precision 1 has been incorporated in the state of New York with a principal place of business at 1 Martin Place, Port Chester, NY.

9. At all times relevant to this action, Defendant Port Byram Holdings, Ltd. ("Port Byram"), has been an employer within the meaning of 29 U.S.C. § 152(2) and Section 3(5) of

ERISA, 29 U.S.C. § 1002(5), and has been engaged in an industry affecting commerce within the meanings of Sections 3(11) and (12) of ERISA, 29 U.S.C. §§ 1002(11) and (12). Upon information and belief, at all times relevant to this action, Port Byram has been incorporated in the state of New York with a principal place of business at 1 Martin Place, Port Chester, NY.

## Factual Background

### A.  Zodiac's Obligations

10.  Zodiac employed employees represented for the purposes of collective bargaining by the International Association of Sheet Metal, Air, Rail and Transportation Union (formerly known as the Sheet Metal Workers' International Association), Local Union 38 ("Local 38" or the "Union"), a labor organization representing employees in an industry affecting interstate commerce.

11.  Zodiac was signatory to, and bound by, a collective bargaining agreement ("Agreement" or "CBA") with the Union. Pursuant to the Agreement, Zodiac was obligated to submit monthly remittance reports and fringe benefit contributions to the NPF for all hours worked or paid on behalf of Zodiac's covered employees within the jurisdiction of Local 38.

12.  Pursuant to the Agreement, Zodiac was obligated to abide by the terms and conditions of the Trust Agreement establishing the Fund, including any amendments thereto and policies and procedures adopted by the Board of Trustees ("Trust Document").

### B.  Withdrawal Liability

13.  In 2021, the NPF determined that Zodiac had affected a complete withdrawal from the NPF on or about August 31, 2016 within the meaning of Section 4203(a) of ERISA, 29 U.S.C. § 1383(a). On January 21, 2022, the NPF sent a notice of withdrawal to Zodiac, Precision 1 as an alter ego and/or successor to Zodiac and to Port Byram as a member of Zodiac's controlled group,

advising the companies of the owed withdrawal liability to the NPF resulting from Zodiac's withdrawal. This notice informed Defendants that withdrawal liability was assessed in the amount of $2,662,668.35 and that it was amortized, as required by Section 4219(c) of ERISA, 29 U.S.C. § 1399(c), in a payment schedule to 50 quarterly payments in the amount of $77,259.24 each, with the first payment being due March 1, 2022, and the final payment of $66,736.83 due on September 1, 2034.

14. In accordance with Section 4219(b)(2)(A) of ERISA, 29 U.S.C. §1399(b)(2)(A), Zodiac and Defendants had ninety (90) days from receipt of the initial notice and demand to request a review of the amount of the liability and/or the schedule for the payments. Neither Zodiac nor Defendants made a request for review of the withdrawal liability assessment.

15. On February 28, 2022 and March 4, 2022, Zodiac and Defendants, through their counsel, sent a series of letters to the Fund requesting that the Fund prepare a summary outlining the Fund's position as to its withdrawal liability assessment against Zodiac, Precision 1, and Port Byram. Additionally, Defendants requested that the due date of the first installment payment (March 1, 2022) be tolled for a period of 90 days.

16. The Fund agreed to extend the deadline of the first installment payment to May 1, 2022. On March 21, 2022, the Fund sent a letter to Defendants' counsel providing a summary of the factual basis for the assessment against Defendants.

17. Pursuant to Section 4221(a)(1) of ERISA, 29 U.S.C. § 1401(a)(1), regardless of whether Zodiac or Defendants chose to request review of the withdrawal liability assessment, the first withdrawal liability payment was due on May 1, 2022. Zodiac and Defendants failed to make the first scheduled payment. To date, neither Zodiac nor Defendants have made any payments in accordance with the payment schedule.

18. Pursuant to 29 U.S.C. § 1401(a)(1), an employer can initiate arbitration to dispute its withdrawal liability. Neither Zodiac nor Defendants initiated arbitration in accordance with the Fund's Trust Document and the time to do so has expired. As such, Defendants have waived their right to challenge the Fund's assessment.

19. By letter dated June 7, 2022, the NPF notified Zodiac and Defendants of their failure to make the first two payments under the amortized payment schedule and provided the opportunity for Defendants to cure the delinquency. The NPF also notified Defendants in this letter that the failure to correct this delinquency within sixty (60) days of receipt of the letter would constitute a default within the meaning of Section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5), and that the NPF would file a suit against any members of Zodiac's controlled group to collect the full amount of withdrawal liability.

20. Pursuant to 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5), a party is in default if it has not cured its failure to pay its withdrawal liability installment payments within sixty (60) days following a demand. In the event of default, the plan "may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." 29 U.S.C. § 1399(c)(5).

21. Neither Zodiac not Defendants cured the failure to pay the first payment in accordance with the payment plan. Defendants have failed to make any of the statutorily required withdrawal liability payments. Accordingly, Defendants are in default and are liable for the remaining unpaid principal of the withdrawal liability.

22. On September 15, 2022, the Fund sent a subsequent letter to Defendants' counsel reiterating its position with respect to the withdrawal liability assessment and default. The Fund's

6

letter requested that Defendants' counsel advise the Fund if Zodiac or Precision 1 disagreed with any aspects of the Fund's position. To date, Defendants have not responded to the Fund's letter.

23. Because Defendants have failed to pay the amounts owed, they are also liable for interest, liquidated damages, and reasonable attorneys' fees and costs in accordance with the Trust Document and applicable federal law, 29 U.S.C. § 1451(b), (e).

24. The Trust Document provides that interest shall be charged on any amount in default (including accrued interest), from the date the payment was due to the date it is paid. The interest shall be computed and charged at a rate of 0.0205% compounded daily.

25. The Trust Document further provides that in the event of default, an employer is liable to the Fund for attorneys' fees incurred by the Fund from the date of the delinquency forward and costs, and the greater of (1) interest on the delinquent withdrawal liability or (2) liquidated damages in the amount of 20% of the delinquent withdrawal liability.

**C.    Defendant Precision 1 Is a Successor and/or Alter Ego of Zodiac.**

26. Although Precision 1 is not signatory to the CBA with Local 38, Precision 1 is a successor and/or alter ego of Zodiac, and thus is liable for Zodiac's obligations to the Fund.

27. Upon information and belief, Defendant Precision 1 substantially continued the operations of Zodiac upon Zodiac's cessation of business. Zodiac and Precision 1 shared an interrelation of operations, common management, centralized control of labor relations, and business purpose, and Precision 1 continued to operate with Zodiac's equipment, customers, and employees. Specifically:

   a. Precision 1 operates out of the same address formerly used by Zodiac at 1 Martin Place, Port Chester, NY 10673. As of at least August 2021, signage with Zodiac's name was still visible at this address.

  b. Precision 1 was registered in New York on August 14, 2016. Around this time, Zodiac was engaged in litigation for delinquent contributions with the NPF as well as certain Local 38 benefit funds. Zodiac then filed for bankruptcy on February 16, 2017.

  c. Members of the Pasqualini family owned and operated Zodiac and continue to operate Precision 1. Frank Pasqualini Sr. managed Zodiac and his wife Maribeth Pasqualini was Zodiac's owner and CEO. Their daughter, Corinne Pasqualini is the CEO of Precision 1. Frank Pasqualini Sr. has consulted consult for Precision 1.

  d. Precision 1 shared employees with Zodiac including but not limited to Frank Pasqualini, Sr., his son Frank Pasqualini, Jr., and Corinne Pasqualini;

  e. Zodiac's telephone number (914) 939-6120 remains in service and online listings claim the company is still open;

  f. Zodiac and Precision 1 employ the same classification or similar classification of employees, those employees have the same or similar training, and Zodiac and Precision 1 perform the same type of work in the same industry in the same geographic market;

  g. Precision 1 obtained the physical assets of Zodiac and Precision 1 continues to operate with Zodiac's equipment;

28. Because Precision 1 is not signatory to a Local 38 collective bargaining agreement, Zodiac has benefited through the elimination of its labor obligations while its successor and/or alter ego, Precision 1, continued to perform covered work. By performing the same work in the same industry with the same employees as Zodiac, but now as a non-union operation, Precision 1 is reaping the financial advantage of not providing benefits as required by its Local 38 collective bargaining agreement, including its pension obligations.

29. As a successor and/or alter ego of Zodiac, Precision 1 is an employer within the meaning of 29 U.S.C. § 152(2) and Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and jointly and severally liable for any obligations of Zodiac arising from the CBA.

**D.    Defendant Port Byram Is Part of Zodiac's Controlled Group.**

30. ERISA mandates that "all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." ERISA Section 4001(b)(1), 29 U.S.C. § 1301(b)(1). A group of trades or businesses under common control is generally referred to as a "controlled group."

31. Regulations promulgated under ERISA Section 4001(b)(1), 29 U.S.C. § 1301(b)(1), have adopted by reference the Internal Revenue Service's regulations defining "trades or businesses under common control" found at 26 C.F.R. § 1.414(c)-1 et seq. 29 C.F.R. § 4001.3(a)(1).

32. Because members of a controlled group are treated as a single employer, the "controlled group" is the "employer" for purposes of determining and assessing withdrawal liability, and all members of the controlled group are jointly and severally liable with one another.

33. Section 1563(a) of the Internal Revenue Code provides certain tests to determine whether a controlled group situation exists. A brother-sister control group is a group of two or more corporations, in which five or fewer common owners own directly or indirectly a "controlling interest" of each group and have "effective control." According to 26 C.F.R. § 1.414(c)-2(b)(2), "controlling interest" is defined as 80 percent or more of the stock of each corporation. According to 26 C.F.R. § 1.414(c)-2(c)(2), effective control means 50 percent of the stock of each corporation but only to the extent such stock ownership is identical with respect to such corporation.

34. Zodiac and Port Byram are both wholly owned by Maribeth Pasqualini. Therefore, Zodiac and Port Byram are a members of a brother-sister controlled group as each has five or fewer common owners who own a controlling interest and have effective control.

35. As members of a controlled group, Zodiac and Port Byram are jointly and severally liable for the withdrawal liability assessed as a result of Zodiac's withdrawal from the Fund, plus accrued and accruing interest, liquidated damages, and attorneys' fees and costs.

## Count I
*Withdrawal Liability*

36. Plaintiffs reallege and incorporate Paragraphs 1 through 36.

37. This claim arises under ERISA Sections 502(a)(3), (d)(1) and (g)(2), 515, 4219, 4221, and 4301, 29 U.S.C. §§ 1132(a)(3), (d)(1) and (g)(2), 1145, 1399, 1401, and 1451.

38. Zodiac has failed to pay amounts owed for withdrawal liability for a period greater than sixty (60) days after notification of failure by the NPF. As a result, Zodiac is in default under Section 4219 of ERISA, 29 U.S.C. § 1399(c)(5).

39. Because Precision 1 is a successor and/or alter ego of Zodiac, Precision 1 is jointly and severally liable for Zodiac's withdrawal liability.

40. Similarly, because Port Byram is in the same controlled group as Zodiac, Port Byram is jointly and severally liable for Zodiac's withdrawal liability.

41. As a result of Defendants' failure to cure their default on withdrawal liability installment payments to NPF, Defendants are jointly and severally liable for the full principal amount of the withdrawal liability assessment pursuant to the Trust Document and Section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5) in the amount of $2,662,668.35.

42. As a result of Defendants' failure to timely remit the withdrawal liability amounts owed to NPF, Defendant is liable for interest on all late payment amounts according to the Trust

Document and Section 4219(c)(5) of ERISA in the amount of at least $5,398.17 (calculated through October 31, 2022). Interest continues to accrue on these unpaid amounts until the date of payment.

43. As a result of Defendants' failure to timely remit the withdrawal liability amounts owed to NPF, Defendant is liable for liquidated damages in the amount of 20% of the delinquent withdrawal liability according to the terms of the Trust Document and federal law in the amount of at least $532,533.67.

44. As a result of Defendants' failure to timely remit the withdrawal liability amounts owed to NPF, Defendants are liable for the reasonable costs and attorneys' fees incurred in connection with this action according to the terms of the Trust Document and federal law.

45. Prior to commencing this lawsuit, the Fund sent letters and contacted Defendants to obtain the outstanding contributions from Defendants. Defendants have not cured their default. There is little prospect that, lacking judicial compulsion, Defendants will satisfy their obligations to the Fund, and pay the delinquent withdrawal liability and liquidated damages and interest on the delinquent withdrawal liability.

**WHEREFORE**, Plaintiff requests a judgment against Defendants for all amounts due to the Funds as follows:

1. Declare that Defendant Precision 1 is a successor and/or alter ego employer to Zodiac and are joint and severally liable for each other's debts;

2. Declare that Defendant Port Byram is a member of Zodiac's controlled group and is jointly and severally liable for Zodiac's withdrawal liability;

3. Declare that Zodiac has defaulted on its withdrawal liability;

4. Enter judgment against Defendants for the entirety of Zodiac's withdrawal liability, in the amount of $2,662,668.35;

5. Enter judgment against Defendants for interest on the delinquent withdrawal liability payments at a rate of 0.0205% per day, compounded daily, from the date due until the date paid or the date of the judgment, in the amount of at least $3,411.06;

6. Enter judgment against Defendants for liquidated damages in an amount equal to the greater of interest on the delinquent withdrawal liability calculated at the above rate, or 20% of the delinquent withdrawal liability, in the amount of at least $532,533.67;

7. Enter judgment for all attorneys' fees and costs incurred by the Fund in pursuing the delinquent amounts as provided by Section 502(g) of ERISA; and

8. Award such other relief as the Court deems just and proper.

Respectfully Submitted,

/s/ John R. Mooney
John R. Mooney (Bar No. 22212)
Mooney, Green, Saindon, Murphy & Welch, P.C.
1920 L Street, NW, Suite 400
Washington, D.C. 20036
(202) 783-0010
(202) 783-6088 facsimile
jmooney@mooneygreen.com
*Counsel for Plaintiff Funds*

Dated: November 2, 2022

## CERTIFICATE OF SERVICE UNDER 29 U.S.C. § 1132(h)

      I hereby certify that on this 2nd day of November, 2022, a true and correct copy of the foregoing COMPLAINT UNDER ERISA FOR WITHDRAWAL LIBALITY, INTEREST, LIQUIDATED DAMAGES, ATTORNEYS FEES, AND COSTS was served via certified mail on:

U.S. Department of Labor
Attn: Assistant Solicitor for Plan Benefits Security
200 Constitution Ave., N.W.
Washington, DC 20002

U.S. Department of Treasury
Attn: Secretary of the Treasury
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

                                                          /s/ John R. Mooney
                                                   John R. Mooney